IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

STEVEN D. STEWART,

                                         Plaintiff,

v.

DR. BURTON COX, JR., H.S.U. MARY MILLER,
NURSE JOLINDA WATERMAN,
NURSE SHERYL KINYON, DR. DALIA SULIENE,
DR. BRAD MARTIN, DR. GLEN HEINZL,
DR. KARL HOFFMAN,
H.S.U. MANAGER KAREN ANDERSON,
NURSE NATALIE NEWMAN,
NURSE TRISHA ANDERSON,
NURSE KIM CAMPBELL, NURSE MELISSA THORNE,
NURSE ROSE DRAFAHL, ANN PETERS-ANDERSON,
NURSE PHILLIP KERCH, NURSE DAVID SPANNAGEL, and
SGT. RICHARD MATTI,

                                           Defendants.

OPINION & ORDER

14-cv-665-jdp

---

      Pro se prisoner Steven Stewart is proceeding against several defendants with claims under the First and Eighth Amendments, and with state law claims for medical malpractice. Plaintiff alleges that prison medical personnel provided him with inadequate medical care for a urinary tract infection and a urinary retention condition, and that they retaliated against him when he reported the deficient care that he received.

      Defendants Ann Peters-Anderson, Rose Drafahl, and Glen Heinzl have each moved for summary judgment, contending that plaintiff failed to exhaust his administrative remedies for the claims that he has asserted against them. Plaintiff has opposed all three motions, relying on grievances that he submitted through his institution's grievance system. After reviewing these grievances and the undisputed facts of the case, I conclude that plaintiff has failed to exhaust his administrative remedies for the claims that he asserts against Heinzl. I

will therefore grant Heinzl's motion for summary judgment. But plaintiff has exhausted his administrative remedies for the claims that he asserts against Peters-Anderson and Drafahl, so I will deny their motions for summary judgment. I will also address three pending discovery-related motions.

FACTS

The screening order describes the factual background of this case. Dkt. 10. But I will provide a brief summary below. This summary is based on the allegations in plaintiff's complaint, which I accept as true at this point in the case because we have not yet reached the merits of plaintiff's claims. I will also recount plaintiff's efforts to raise his concerns about his medical treatment through the Inmate Complaint Review System (ICRS). Based on the affidavits and grievance materials that the parties have submitted, I find the facts relating to plaintiff's use of the ICRS to be undisputed.

In 2004 or 2005, doctors at the University of Wisconsin Hospital diagnosed plaintiff with a urinary retention condition that makes it difficult for him to urinate. Doctors instructed plaintiff to wear a catheter to treat the condition, and they recommended that he catheterize himself seven to eight times each day. Prison medical officials decided to have plaintiff wear a Foley catheter, which would need to be changed only monthly instead of several times a day. Plaintiff initially received Vicodin before changing his catheter, to help manage his pain. But in 2013, when plaintiff was transferred from the Wisconsin Secure Program Facility to the Columbia Correctional Institution, medical personnel began refusing to give plaintiff Vicodin. He also had difficulty obtaining catheterization supplies and prompt medical treatment when his catheter came out.

I granted plaintiff leave to proceed against several defendants, only three of whom have moved for summary judgment for plaintiff's failure to exhaust administrative remedies. With regard to these defendants, I concluded that plaintiff had stated Eighth Amendment claims against defendants Peters-Anderson and Drafahl for recording false progress notes, denying plaintiff pre-procedure pain medication, and failing to provide plaintiff with necessary medical supplies. I also concluded that plaintiff had stated Eighth Amendment claims against defendant Heinzl for removing plaintiff's prescription for pre-procedure Vicodin and failing to provide other pain relief for plaintiff's catheterization needs. Finally, I concluded that plaintiff had stated First Amendment claims against Heinzl for withholding medication after plaintiff complained about the treatment that he received.[1]

Plaintiff submitted several grievances through the ICRS regarding the medical care that he received, four of which are relevant to defendants' motions. Plaintiff filed the first of these grievances, CCI-2013-9917, around May 20, 2013.[2] Dkt. 1-1, at 1-3. The grievance concerned difficulties that plaintiff had receiving catheterization supplies and medication. The Institution Complaint Examiner (ICE) recommended dismissing the grievance after conferring with the manager of the health services unit, who confirmed that plaintiff had received all of the necessary supplies and that orders were in place for plaintiff to receive Vicodin as of June 10, 2013. The reviewing authority dismissed the grievance. Plaintiff

---

[1] Plaintiff filed an amended complaint that mentioned Peters-Anderson and Drafahl in a set of allegations under the heading of "Retaliation 1st Amendment Claim." Dkt. 24, at 5. But in granting plaintiff's motion to amend, I explained that I understood his amended complaint to supplement his general factual allegations rather than add new defendants to his existing retaliation claims. Dkt. 39, at 2-3. Plaintiff did not object to my conclusion.

[2] Plaintiff's actual grievance is not in the record. Instead, the parties base their arguments on the reports that prison officials and Department of Corrections staff generated in response to plaintiff's initial grievances and related appeals.

appealed the decision to the corrections complaint examiner (CCE), who recommended dismissing the appeal because plaintiff had not identified a reason to overturn the decisions of medical personnel. The secretary of the Wisconsin Department of Corrections adopted the CCE's decision.

Plaintiff filed a second grievance, CCI-2013-19314, on October 1, 2013. Dkt. 75-1. He stated that medical staff had retaliated against him for filing the first grievance, and that a doctor whom he had never met had changed the order allowing plaintiff to take Vicodin before catheterizing himself. The ICE again contacted the manager of the health services unit, who again confirmed that plaintiff was receiving adequate treatment that was consistent with the care ordered by medical professionals. The ICE recommended dismissing the grievance, and the reviewing authority followed the recommendation. When plaintiff appealed, the CCE recommended dismissing the appeal, and the secretary adopted the CCE's decision.

Plaintiff filed a third grievance, CCI-2014-9445, on May 11, 2014. Dkt. 59-1. He stated that on May 9, 2014, he had visited Peters-Anderson (plaintiff's grievance referred to her as "Nurse Ann"), who told him that there were no catheter kits available. Peters-Anderson put together some catheterization supplies for plaintiff, but she did not include gloves, drapes, a specimen container, or syringes—all supplies that plaintiff contended were necessary to catheterize himself. Peters-Anderson also did not give plaintiff Vicodin, even though he showed her official responses to an earlier grievance indicating that orders were in place for pain medication. She explained that "it's not written." *Id.* The ICE consulted with prison medical staff and learned that plaintiff's prescription for Vicodin was discontinued in April 2014, and that plaintiff had received the necessary supplies for catheterizing himself, including an empty syringe. The ICE recommended dismissing the grievance, and the

4

reviewing authority followed the recommendation. When plaintiff appealed, the CCE recommended dismissing the appeal, and the secretary adopted the CCE's decision.

Finally, plaintiff filed a fourth grievance on May 12, 2014. Dkt. 57-1, at 7. This grievance did not receive a number because the ICE rejected it as duplicating the third grievance. In this grievance, plaintiff again stated that Peters-Anderson had denied him Vicodin despite his efforts to show her prior grievance materials indicating that he was to receive the medication. The CCE rejected plaintiff's appeal because he had not properly completed a round of review at the institution level.

## ANALYSIS

A. **Defendants' motions for summary judgment**

Under the Prison Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has applied "the PLRA's exhaustion requirement . . . to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (internal citations omitted). To properly exhaust a claim, "the inmate must file a timely grievance utilizing the procedures and rules of the state's prison grievance process." *Maddox v. Love*, 655 F.3d 709, 720 (7th Cir. 2011). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies, and thus is foreclosed by § 1997e(a) from litigating." *Pozo v. McCaughtry*, 286 F.3d 1022,

1024 (7th Cir. 2002). Failure to exhaust is an affirmative defense, which defendants have the burden of proving. *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004).

The State of Wisconsin makes administrative remedies available to inmates through the ICRS. Under this system, an inmate must file a complaint with the ICE within 14 calendar days after the occurrence giving rise to the complaint. Wis. Admin. Code DOC § 310.09(6). After the ICE reviews the complaint, he or she recommends action to a reviewing authority. *Id.* § 310.11(4), (11). The reviewing authority then makes a decision within 10 working days of receiving the recommendation. *Id.* § 310.12. Inmates unsatisfied with a reviewing authority's decision may appeal that decision to the CCE, who makes a recommendation to the office of the secretary, which ultimately accepts, rejects, or returns the recommendation to the CCE. *Id.* §§ 310.13-.14.

Defendants Peters-Anderson, Drafahl, and Heinzl have each moved for summary judgment contending that plaintiff has failed to exhaust his administrative remedies for the claims that he is asserting against them. I will deny Peters-Anderson and Drafahl's motions, but I will grant Heinzl's motion.

1. **Defendants Peters-Anderson and Drafahl's motions**

I granted plaintiff leave to proceed against Peters-Anderson and Drafahl with Eighth Amendment claims for deliberate indifference to plaintiff's serious medical needs based on allegations that they recorded false progress notes, denied plaintiff pre-procedure pain medication, and failed to provide plaintiff with necessary medical supplies. Dkt. 10, at 8.[3] In

---

[3] Peters-Anderson's brief also contends that plaintiff has not exhausted his administrative remedies for the retaliation claim that he asserts against her. Dkt. 60, at 3. But I did not grant plaintiff leave to proceed against Peters-Anderson with a retaliation claim, and so exhaustion of that claim is irrelevant.

this case, I understand plaintiff to allege that Peters-Anderson denied him medical supplies because the health services unit was out of catheter kits—an excuse that plaintiff implies was a lie. Dkt. 1, ¶ 85 and Dkt. 24, ¶ 17. I also understand plaintiff to allege that Drafahl improperly denied him medical supplies. Dkt. 1, ¶ 85. Finally, I understand plaintiff to allege that Peters-Anderson and Drafahl denied him pre-procedure Vicodin because a doctor had terminated this prescription—again, an excuse that plaintiff implies was a lie or otherwise improper. Dkt. 1, ¶ 85 and Dkt. 24, ¶ 17.

Peters-Anderson and Drafahl initially argued that the grievances attached to plaintiff's complaint—CCI-2013-9917 and WSPF-2012-11874—did not address the conduct that led to plaintiff's claims against the nurses in this case. Dkt. 43, at 4 and Dkt. 48, at 4. Plaintiff agreed that these were not the pertinent grievances. Dkt. 56, at 2 and Dkt. 58, at 2. But he produced the materials that he submitted as part of CCI-2014-9445, which he now contends exhausted his claims against Peters-Anderson and Drafahl.

Peters-Anderson and Drafahl persist in their motion for summary judgment: they do not agree that the '9445 grievance satisfied plaintiff's obligation to exhaust his administrative remedies. According to Peters-Anderson and Drafahl, the grievance neutrally described the medical care that the nurses provided to plaintiff, but it did not expressly accuse them of *wrongful* conduct. Although I agree that the '9445 grievance did not provide a detailed narrative describing precisely how Peters-Anderson and Drafahl inappropriately denied plaintiff medical care, that is not the standard that I must use to evaluate an inmate's efforts to exhaust his administrative remedies.

An inmate does not need to lay out a detailed factual narrative, articulate legal theories, or demand particular relief to exhaust his administrative remedies, he must merely

"object intelligibly to some asserted shortcoming." *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). "[T]he standard is whether the offender complaint would put an official on notice of the plaintiff's claim." *Wille v. Pugh*, No. 13-cv-1024, 2015 WL 5254532, at *6 (E.D. Wis. Sept. 9, 2015). Here, the '9445 grievance stated that Peters-Anderson told plaintiff that the health services unit did not have catheter kits, and that she denied him Vicodin despite the fact that he showed her documentation from an earlier grievance confirming that he was supposed to receive the medicine. Dkt. 59-1. The grievance also stated that Drafahl denied plaintiff gloves and was very rude. *Id.* Plaintiff appealed to the CCE after the reviewing authority dismissed this grievance, expressing his disbelief that a doctor had changed the order for pre-procedure Vicodin without examining plaintiff, repeating his concern about being forced to catheterize himself without gloves, and accusing the nurses of "writing lies in the records." Dkt. 59-3. Plaintiff also completed and submitted a separate grievance stating that Peters-Anderson had improperly ignored his request for Vicodin, Dkt. 57-1, at 7, but the ICE rejected this grievance as duplicating an earlier grievance.

Based on the overall tone and specific statements in plaintiff's grievance, prison officials had notice of his objection to the supplies that he received—or did not receive—from Peters-Anderson and Drafahl, and of his objection to their involvement in withholding Vicodin.[4] Indeed, prison officials' responses to plaintiffs grievances confirm as much: the ICE summarized CCI-2014-9445 as complaining about inadequate medical treatment and a lack of Vicodin, Dkt. 59-2, and a different ICE returned plaintiff's unnumbered grievance after

---

[4] The fact that plaintiff did not mention Drafahl by name in his grievances about not receiving Vicodin is immaterial. "Nothing in the Wisconsin Administrative Code requires an inmate to name all individuals responsible for the issue identified in the complaint." *McKinnie v. Heisz*, No. 09-cv-188, 2009 WL 3245410, at *2 (W.D. Wis. Oct. 7, 2009).

8

explaining that "[w]e are not going to keep taking in complaints when you already have one pending for [a] similar issue," Dkt. 57-1, at 6. These responses show that prison officials understood plaintiff to be challenging the adequacy of his medical care: specifically, whether he received the necessary catheterization supplies and whether he was properly denied Vicodin.

Plaintiff completed each step of the ICRS to challenge the conduct that is the basis for his Eighth Amendment claims against Peters-Anderson and Drafahl in this case. Peters-Anderson and Drafahl cannot carry their burden of demonstrating that plaintiff failed to exhaust his administrative remedies. I will therefore deny their motions for summary judgment.

### 2. Defendant Heinzl's motion

I granted plaintiff leave to proceed against Heinzl with Eighth Amendment claims for deliberate indifference to plaintiff's serious medical needs based on allegations that Heinzl removed plaintiff's prescription for pre-procedure Vicodin and failed to provide other pain relief for plaintiff's catheterization needs. Dkt. 10, at 8. I also granted plaintiff leave to proceed against Heinzl with First Amendment claims for retaliation based on allegations that he removed plaintiff's Vicodin prescription after plaintiff complained about inadequate medical care. *Id.* at 10. Plaintiff contends that he exhausted these claims through the ICRS by submitting CCI-2013-19314. I disagree, and I will therefore grant Heinzl's motion for summary judgment.

In the '19314 grievance, plaintiff indicated that the issue of pre-procedure Vicodin had been straightened out in June 2013, Dkt. 75-1, at 2, and in appealing the dismissal of that grievance, plaintiff explained that it was Heinzl who had put the necessary orders for

Vicodin in place, *id.* at 1. The grievance stated that Dr. Martin—who is also a defendant in this case—changed the orders in July 2013. *Id.* at 2. Plaintiff complained that he had never seen Dr. Martin, and he generally objected to being denied pre-procedure Vicodin. *Id.* But neither the initial grievance nor the appeal indicated that Heinzl did anything to harm plaintiff. Quite the opposite: plaintiff confirmed that Heinzl had *provided* Vicodin and *other* doctors had improperly changed those orders.

Plaintiff's positive description of Heinzl's actions in CCI-2013-19314 distinguishes the grievance from CCI-2014-9445, which concerned Peters-Anderson and Drafahl. With regard to the nurses, plaintiff generally complained about inadequate medical care and identified specific actions that they took. In their summary judgment motions, Peters-Anderson and Drafahl contend that plaintiff's grievance did not specifically state that the nurses' conduct was wrongful, and therefore did not "object intelligibly" to that conduct. But the overall theme in CCI-2014-9445 was that plaintiff was denied adequate medical care, and plaintiff's statements suggested that he held Peters-Anderson and Drafahl at least partly responsible. In CCI-2013-19314, however, plaintiff mentioned Heinzl only to identify him as the doctor who provided Vicodin; there was no implication that Heinzl had done anything to harm plaintiff. Put another way, the mere lack of a specific allegation of wrongfulness in CCI-2014-9445 would not have prevented prison officials from understanding plaintiff to be complaining about the nurses' conduct and investigating accordingly. But in CCI-2013-19314, the specific allegations of wrongfulness against other doctors, combined with only *positive* statements about how Heinzl helped plaintiff, left prison officials with no reason to think that plaintiff was dissatisfied with Heinzl's care. CCI-2013-19314 did not object to an asserted shortcoming for which Heinzl was responsible.

10

Plaintiff failed to alert prison officials to the wrongful conduct that forms the basis for his First and Eighth Amendment claims against Heinzl in this case. He has therefore failed to exhaust his administrative remedies for these claims, and I must grant Heinzl's motion for summary judgment. Plaintiff's First and Eighth Amendment claims against Heinzl will be dismissed. Although this dismissal will be without prejudice, it may well be too late for plaintiff to exhaust these claims and file a new lawsuit. *See Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

**B. Discovery disputes**

There are three pending motions related to discovery disputes between the parties: (1) defendant Heinzl's motion for sanctions against plaintiff, Dkt. 66; (2) plaintiff's motion for sanctions against Heinzl, Dkt. 88; and (3) plaintiff's motion for sanctions against several of the defendants who are represented by the Wisconsin Department of Justice, Dkt. 95. I will deny all three motions.

**1. Heinzl's motion for sanctions against plaintiff**

Heinzl served plaintiff with an interrogatory asking him to identify each fact or alleged fact that supported his claims against Heinzl, as well as each medical record that was relevant to those claims. Heinzl also requested copies of every medical record that supported plaintiff's claims and every grievance that plaintiff had filed alleging wrongful conduct by Heinzl. For the interrogatory, plaintiff responded that Heinzl could find the alleged facts in the complaint and amended complaint. For the document requests, plaintiff responded that Heinzl either already had access to the relevant documents or could obtain them from prison personnel. Heinzl has moved for sanctions pursuant to Federal Rule of Civil Procedure 37(d)(1)(A)(ii), contending that plaintiff's responses were deficient. Dkt. 66.

As an initial matter, Heinzl has jumped the gun by skipping directly to sanctions without first moving for an order to compel, pursuant to Rule 37(a). Plaintiff responded to Heinzl's discovery requests—late, but Heinzl has not objected to plaintiff's responses as untimely—with written objections. Dkt. 69, at 1-2. "Because a party who serves objections or what purport to be answers has not completely failed to respond, a motion for sanctions [under Rule 37(d)] is inappropriate." 7 James Wm. Moore, Moore's Federal Practice § 37.02[4] (3d ed. 2015); *see also Pringle v. Garcia*, No. 09-cv-22, 2013 WL 1911484, at *4 (N.D. Ind. May 8, 2013) ("[E]vasive or incomplete responses are not treated as failures to respond or answer under Rule 37(d).").[5]

I will put the procedural issue aside, however, and consider the merits of the request for sanctions. Heinzl seeks sanctions in the form of striking portions of plaintiff's pleadings or, in the alternative, dismissing plaintiff's claims against Heinzl with prejudice. Dkt. 66, at 3. These sanctions are unnecessary because I have already concluded that plaintiff has failed to exhaust his administrative remedies for the claims that he asserts against Heinzl. Heinzl also moves for attorney fees that he incurred in bringing his motion for sanctions. *Id.* I will deny this motion because the circumstances of this case make an award of fees unjust. *See* Fed. R. Civ. P. 37(a)(1), (d)(3). The offending party is a pro se prisoner. Although plaintiff's objections were unfounded, they resulted from plaintiff's incorrect belief that he could direct

---

[5] Perhaps immediate sanctions might be appropriate under more extreme circumstances. *See Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976) ("It is true that rule 37(d) does not specifically cover giving answers that are evasive and incomplete, as distinguished from failing to answer at all. . . . We believe, however, that when, as here, the fact that answers to interrogatories are evasive or incomplete cannot be determined until further proceedings have been conducted to obtain the information later determined to have been withheld, the evasive or incomplete answers are tantamount to no answer at all, and rule 37(d) is applicable.") (internal citations omitted). But Heinzl has not identified any such circumstances in this case.

Heinzl to other sources to satisfy his discovery obligations, not from plaintiff's intent to sabotage Heinzl's case.

For future reference, I will warn plaintiff that his responses were not appropriate. Plaintiff cannot object to another party's discovery requests simply because that party has objected to plaintiff's own discovery requests. Likewise, plaintiff cannot direct a party to look elsewhere for information that he has. Defendants are entitled to know and examine the documents and other records that plaintiff plans to use to support his claims against them. It is plaintiff's obligation to comply with defendants' lawful discovery requests. Even if plaintiff contends that it would be unduly burdensome for him to provide copies of documents, he must at least identify the specific evidence that he will use against each defendant.

2. **Plaintiff's motion for sanctions against Heinzl**

Plaintiff moves for sanctions against Heinzl, contending that Heinzl improperly answered plaintiff's requests for admissions. Dkt. 88. The gist of plaintiff's motion is that Heinzl responded "way too fast," answering plaintiff's requests for admissions before receiving his medical records from the Wisconsin Attorney General's office. *Id.* By answering before receiving the records, Heinzl was able to deny specific knowledge for most of plaintiff's requests for admissions. *See* Dkt. 41.

I will deny plaintiff's motion for several reasons. First, plaintiff has not certified that he conferred with Heinzl's counsel in an attempt to resolve this discovery dispute without court intervention. *See* Fed. R. Civ. P. 37(a)(1).[6] Plaintiff must follow the procedures set out in the Federal Rules of Civil Procedure before seeking sanctions for discovery violations.

---

[6] Contrary to plaintiff's suggestion, Dkt. 88, at 2, Rule 37(c) does not provide a basis for imposing sanctions because plaintiff has not proven that Heinzl failed to admit any fact that turned out to be true.

Second, there is no requirement that a party use the full 30 days to answer a request to admit, nor is answering "way too fast" a valid criticism of a party's response to a request to admit, although an answering party is obligated to supplement responses that it later learns are incomplete or incorrect. Third, as required, Heinzl supplemented his responses after receiving plaintiff's medical records. Dkt. 97. Thus, plaintiff now has the answers that he requested. Finally, because I will dismiss Heinzl from this case, plaintiff likely cannot show that the delay in receiving Heinzl's answers caused any harm. Thus, I will deny plaintiff's motion for sanctions against Heinzl.

### 3. Plaintiff's motion for sanctions against other defendants

Plaintiff also moves for sanctions against defendants Trisha Anderson, Kim Campbell, Jolinda Waterman, Burton Cox, Brad Martin, and Karl Hoffman, all of whom are represented by the Wisconsin Department of Justice. Dkt. 95. Plaintiff contends that these defendants, through counsel, have improperly refused to respond to his notice of depositions by written questions. Plaintiff observes that Heinzl answered his written deposition questions, and so he suggests that these defendants should answer his questions as well. I will deny plaintiff's motion because counsel correctly explained to plaintiff that his notice was deficient.

Under Rule 31(a)(3), a party seeking to depose a person by written questions must "state the name or descriptive title and the address of the officer before whom the deposition will be taken." Plaintiff's notice did not include this information. Dkt. 100-1. Counsel identified this deficiency in a written letter to plaintiff, Dkt. 100-2, who responded that he was his own officer of the court because he is proceeding pro se, Dkt. 100-3. Counsel wrote plaintiff another letter explaining that plaintiff is *not* an officer of the court. Dkt. 100-4. As an alternative to a deposition by written questions, counsel offered to convert plaintiff's

questions into interrogatories. *Id.* But counsel informed plaintiff that each defendant would answer only 25 interrogatories, pursuant to Rule 33(a)(1), and so plaintiff would need to select which questions he wanted to ask. *Id.*

Plaintiff is entitled to take depositions by written questions. But he must follow the procedures for doing so. These procedures include arranging and paying for an officer (usually a stenographer or court reporter) to conduct the depositions. The court would not pay these costs. *See Lindell v. McCallum*, 352 F.3d 1107, 1111 (7th Cir. 2003) (a pro se plaintiff proceeding in forma pauperis "has no constitutional entitlement to subsidy . . . to prosecute a civil suit; like any other civil litigant, he must decide which of his legal actions is important enough to fund" (internal citations omitted)); *Werner v. Hamblin*, No. 12-cv-0096, 2013 WL 788076, at *1 (E.D. Wis. Mar. 1, 2013) (the cost of a court reporter "is not an expense that the court would pay." (citing *McNeil v. Lowney*, 831 F.2d 1368, 1373 (7th Cir. 1987)). If plaintiff is unwilling to go through the time and expense required for taking depositions by written questions, then he can consider counsel's reasonable alternative: converting his questions to interrogatories. Finally, it is irrelevant that a different defendant did not object to plaintiff's deposition notice. *These* defendants have properly objected.

I will address one final point regarding plaintiff's motion for sanctions. In his reply brief, plaintiff asserts that opposing counsel committed perjury by not mentioning one of plaintiff's discovery requests in an affidavit that counsel filed. Dkt. 102. Counsel responded to this accusation by acknowledging the omission and explaining that it was an oversight: he had forgotten that he received the discovery request. Dkt. 104. The mistake was harmless and it was unintentional. It was not perjury.

ORDER

IT IS ORDERED that:

1. Defendants Ann Peterson-Anderson and Rose Drafahl's motions for summary judgment, Dkt. 42 and Dkt. 46, are DENIED.

2. Defendant Glen Heinzl's motion for summary judgment, Dkt. 51, is GRANTED. Plaintiff Steven Stewart's First and Eighth Amendment claims against Heinzl are DISMISSED, without prejudice, for failure to exhaust administrative remedies.

3. Heinzl's motion for sanctions, Dkt. 66, is DENIED.

4. Plaintiff's motions for sanctions, Dkt. 88 and Dkt. 95, are DENIED.

Entered December 18, 2015.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge